Louise Luebke, by Robert B. Luebke, Conservator of Estate of Louise Luebke, Incompetent, and Robert B. Luebke, Individually, Appellants, v. Laura M. Browning (nee Luebke), and First National Bank of Lake Forest, as Trustee Under Trust Nos. 492 and 471, and as Administrator of Estate of Harry J. Luebke, Appellees.

Gen. No. 47,272.

First District, First Division.

June 30, 1958.

Released for publication September 29, 1958.

Patrick F. Murray, and McCarthy, Toomey & Reynolds, all of Chicago (John E. Toomey, and John M. Kaveny, of counsel) for appellants.

Hubbard, Hubbard & Dorgan, of Chicago, for Laura M. Browning, defendant-appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from an order dismissing an amended complaint in chancery. Plaintiffs sought to impress a trust on the proceeds from a sale of certain real estate. The cause was heard by a master who recommended the dismissal of plaintiffs' amended complaint for want of equity. The chancellor entered an

order sustaining the master's report and dismissing the suit.

Robert B. Luebke filed a complaint, individually and as conservator of the estate of his sister, Louise, against another sister, Laura M. Browning, and the First National Bank of Lake Forest as trustee under two trusts known as Trust No. 471 and Trust No. 492 and as administrator of the estate of her father, Harry J. Luebke. The complaint sought an accounting of funds in the hands of the administrator based upon the following allegations: that on November 10, 1925, the father was appointed guardian of the estates of the three children; that the father used the guardianship money to acquire two lots of realty in Highland Park, Illinois; that the property was taken in the name of the Roger William Building Corporation, the capital stock of which was issued in the names of the father, his wife Ruth, and the three children; that the property was subsequently put in trust in January, 1944, with the First National Bank of Lake Forest as trustee; that upon the termination of a plan to purchase and redeem bonds outstanding against the property, the father received $27,000; that because of threats and duress by Laura a second trust was created at the same bank with monies belonging to the three children and designating the father, Ruth and Laura as the sole beneficiaries; that the father and Laura received substantial sums from the second trust; and that all of the monies received by the two trusts are the property and assets of the guardianship estate. The complaint concludes with a prayer for an accounting.

The answer of Laura M. Browning alleges that the amount received by Harry as guardian was only $46,252.74; that she has no knowledge sufficient to form a belief as to the creation of Trust No. 471; admits the creation of the second trust, and that it still exists, but

429

denies any threats or duress; denies that the monies paid into the second trust were owing to the guardianship estate; denies knowledge of certain conveyances to the bank; and alleges the defense of laches and the statute of limitations.

On June 5, 1956, the master filed his report in which he found that plaintiffs did not prove that the guardianship funds had been traced into the acquisition of either lot forming the St. John Avenue property nor into the construction of the apartment building that was erected thereon. However, the master stated that with respect to another theory advanced by plaintiffs, his conclusion might be different. He stated that an inference might be drawn from Laura's testimony that the issuance of shares in the names of Robert and Louise constituted an acknowledgment and attempted satisfaction by Harry of his guardianship indebtedness. Plaintiffs were given leave to amend their complaint without prejudice to the rights of defendant Laura to utilize the allegations of the original complaint and without prejudice to the order of reference and hearing before the master in chancery.

The amended complaint reiterates the allegations of the initial complaint and alleges that Harry prepared a draft of the proposed final account as guardian for the minors in 1931 and then acknowledged to his attorney that the minors' money had been invested in purchasing the lots and in erecting the apartment building, and that he agreed to turn over and deliver the building to his children in payment of his indebtedness. It alleges further that he organized the Roger William Building Corporation to accomplish this end, that on March 22, 1931, a charter was issued, that the stock was issued as set forth in the master's report, and that all the stock was then placed in safekeeping for the respective holders with the attorney who had handled the organization of the corporation.

In her answer to the amended complaint Laura denied that Harry invested any of the minors' funds in any real estate, or specifically in the Roger William Building Corporation or in the St. John Avenue property, and that the corporation was insolvent on December 30, 1943, being encumbered with outstanding bonds, the face amount of which far exceeded the value of the property. The answer also alleged that Robert approved all of the transactions incident to the creation of the first trust (No. 471) by which the corporation was to be relieved of its outstanding indebtedness. The answer denied that any of the proceeds of that trust constituted any part of the minors' estate or that the corporation had any interest in the proceeds of the property constituting either Trust No. 471 or Trust No. 492. No additional testimony was taken after the filing of the amended complaint.

The master on the basis of the amended complaint and answer thereto filed a supplemental report. He found that the burden of proof was upon plaintiffs to show by a preponderance of the evidence that their father, Harry Luebke, had made a gift to his children of stock in the Roger William Building Corporation to satisfy his obligation to them arising out of the guardianship. He further found that plaintiffs had been guilty of laches in failing to assert their claims sooner.

The record reveals that in 1924 one Laura A. Laws, the aunt of these plaintiffs and defendant, died testate, bequeathing to them the residue of her estate. The plaintiffs and defendant were minors at that time. Their father, Harry Luebke, was named executor in the will and in November 1925 was appointed testamentary guardian of the three minor legatees by the Probate Court of Cook County. His total receipts as guardian aggregated $67,908.35. The minors' estate was never closed, nor was Harry discharged as guardian at any time prior to his death in 1951.

431

While acting as executor, and later guardian, Harry acquired two lots in Ravinia Station subdivision in Highland Park, Illinois. He and his wife, Ruth, placed a mortgage on these lots for $125,000. Then in 1928 and 1929, an apartment building was erected on the property at a cost of approximately $150,000. The building was incorporated in Illinois as the Roger William Building Corporation on March 22, 1931. The charter indicates that the sole assets of the corporation were the two lots. The total authorized capitalization was $150,000, represented by 1500 shares of common stock bearing a par value of $100 a share. Robert subscribed to 990 shares, Laura to 500, and Harry to 10.

On April 4, 1931, Laura directed that 100 of the shares representing her subscription be issued to her mother, Ruth. Robert directed that 200 of his shares also be issued to Ruth, and that 490 of them be issued to Harry as trustee for Louise. Harry directed that nine of the shares subscribed by him be issued to him as trustee for Louise. These directions were all made in writing. All the certificates were prepared in the office of an attorney and, with the exception of Laura's, all remained in his possession until 1943 or 1944. Laura accepted delivery of her certificates on October 2, 1934. She kept them until June 23, 1943, when she turned them over to her father.

Robert, Laura and Harry were elected directors of the corporation. The corporation remained so constituted until 1943. In that year certain bonds issued by the corporation were in default. Harry made arrangements with one Joseph C. Cormack whereby Cormack would use his capital to buy up the bonds in default at a reduced price, for which service Cormack would be reimbursed in full and receive a fee of $5000. On August 19, 1943, the corporation, Harry and Cormack entered into a written agreement to this effect, provid-

ing further that Harry would cause the shareholders of the corporation to deposit 52% of the capital stock of the corporation with Cormack as additional security for his advancements. The agreement was signed by Harry on behalf of the corporation, as president, and by Laura M. Browning, as secretary.

The record indicates further that on December 31, 1943, Robert, Harry and Ruth held a meeting of the board of directors of the corporation at which they acted on a proposal by Cormack to cancel $109,000 of the bonds against the property in return for a conveyance to him of the property. The directors approved Cormack's proposal and voted that it be submitted to the shareholders at a special meeting to be held January 3, 1944. A meeting was held on waiver of notice, signed by Harry as the owner of 50 shares and by Ruth as the owner of 1450 shares. The record does not reveal at what point Ruth became a director or how 1450 shares stood in her name and 50 in Harry's. The stock transfer book contains the same allocations of stock to which the various parties agreed in 1931.

The property was conveyed to Cormack on January 13, 1944. Two days later Cormack and his wife conveyed the same to the First National Bank of Lake Forest under Trust No. 471. The trust agreement provided that the trustee would hold the property, first, for the use of Joseph C. Cormack, as a preferred beneficiary to the extent of the sums due him until such sums were paid, and thereafter, for Harry J. Luebke and Ruth B. Luebke. A new mortgage was made by the trustee for $60,000, the proceeds of which were paid to Cormack by the trustee. The property was sold to one Harry S. Adler in March, 1944, for a total purchase price of $108,000. After payment of the $60,000 mortgage, the net proceeds amounted to $44,033.79. Cormack was paid the balance due him of $16,972.79. After

payment of certain expenses, including attorney's fees, the bank issued its draft to Harry and Ruth for $26,700. The draft was not cashed until June 24, 1944.

In May, 1944, Harry, Ruth and Laura created a new trust in the same bank, known as Trust No. 492. Twenty-Six Thousand ($26,000) Dollars was paid into this trust on June 24, 1944, the same day that the draft from Trust No. 471 was cashed. The terms of Trust No. 492 provided that upon the death of Harry and Ruth, Laura would be the sole beneficiary. A piece of property in Winnetka, Illinois, was purchased with the money in this trust. That property was subsequently sold, with some of the proceeds of that sale remaining in the trust and the rest going to Harry and Laura.

Ruth Luebke died in February, 1948, and Harry in March, 1951. Laura M. Browning is the sole surviving beneficiary of Trust No. 492. Robert Luebke attained his majority on July 26, 1926. Louise Luebke became of age on June 8, 1927. On October 21, 1936, Louise Luebke was adjudicated insane and sent to Elgin State Hospital, where she still remains.

It is the contention of plaintiffs that their father, while indebted to them for a large sum of money as guardian of their minors' estate, caused a corporation to be formed and conveyed to it certain improved real estate which he and their mother owned, but which plaintiffs contend was purchased and improved with their money. The plaintiffs contend that the father caused the issuance and registration of the stock of the corporation in the names of his children in an intended fulfillment of the obligation and indebtedness he owed to them as guardian. For that reason, they argue, when he converted the children's stock, he held the proceeds from its ultimate disposition in trust for plaintiffs and defendant Laura Browning. Finally, they argue, that Laura Browning is the sole surviving beneficiary of a trust consisting of funds to which the plaintiffs have

traced their interest and which they are entitled to share equally with the defendant.

It is defendant Laura Browning's contention, in substance, that the issuance and registration of the shares of stock in the Roger William Building Corporation in the names of Robert, Laura, and in trust for Louise, was not intended by her father as a satisfaction of his obligation and indebtedness to them as guardian of their minors' estate. She argues that her father, at her request, caused to be delivered to her the shares registered in her name, and that this transfer was the only attempt by her father to satisfy his obligation to any of his children prior to a part payment of $8700 to her, at her request, in 1944. Defendant urges further that she then voluntarily placed this money in Trust No. 492 at the First National Bank of Lake Forest.

The questions presented by the record are whether the registration of the stock on the books of the corporation in the names of Robert and Laura, as individuals, and in the name of Harry, as trustee for Louise, constituted a gift, and second, whether the long delay by Robert, individually and as conservator of the estate of Louise, in asserting a claim to the assets of the corporation, as traced into Trust No. 492 at the First National Bank of Lake Forest, constituted laches.

 There is ordinarily no presumption of a gift in the law and the burden of proving a gift rests with the party purporting to be the donee. Hill v. Bowen, 8 Ill.2d 527, 536 (1956); In re Estate of Schneider, 6 Ill.2d 180, 187 (1955); Rinehart v. Rinehart, 14 Ill. App.2d 116, 121 (1957). The law is settled, however, that where the transferee of property is the wife or a child of the transferor, by whom the purchase price for the property has been paid, a rebuttable presumption arises that the transferor intended a gift to the transferee. Restatement of the Law of Trusts, sec. 442; 2A Bogert, Trusts and Trustees, sec. 459; Moore v.

435

Moore, 9 Ill.2d 556, 558 (1956); Houdek v. Ehrenberger, 397 Ill. 62, 67 (1947); Hartley v. Hartley, 279 Ill. 593, 603 (1917). To rebut this presumption the burden of proving a purchase money resulting trust rests with the presumed donor or other party seeking to establish such a trust. Houdek v. Ehrenberger, supra; Scanlon v. Scanlon, 6 Ill.2d 224 (1955); O'Donnell v. O'Donnell, 303 Ill. 31 (1922).

Was there a sufficient transfer in the instant case to raise the presumption of a gift to Robert and Laura directly and in trust for Louise? As stated, the record reveals that at the time of the incorporation of the Roger William Building Corporation the total authorized capitalization of $150,000 was represented by 1500 shares of common stock with a par value of $100 a share. Robert subscribed to 990 of these shares, Laura to 500, and Harry to 10. A few days after the corporate charter was issued by the Secretary of State these subscribers directed in writing that the shares subscribed by them be issued to Robert, Harry, as trustee for Louise, Laura, Ruth and Harry in his own right. The certificates were then prepared in an attorney's office and with the exception of the certificates which were delivered to Laura, at her request in 1934, all certificates remained in the possession of the attorney until 1943 or 1944. Laura surrendered her certificates to her father on June 23, 1943. The stock transfer book of the corporation reveals that all certificates were issued on April 4, 1931, as follows:

| Certificate No. | Registered Owner | No. of shares |
|---|---|---|
| 1–6 | Robert | 300 |
| 7–16 | Harry, as trustee, | 499 |
| 17–24 | Laura | 400 |
| 25–30 | Ruth | 300 |
| 31 | Harry | 1 |

The stock transfer book reveals no subsequent change of ownership.

On the basis of the record, we are of the opinion that the issuance of certificates in the names of Robert and Laura, individually, and to Harry as trustee for Louise, constitutes a sufficient transfer of the ownership of the capital assets of the corporation to raise the presumption of a gift from Harry to his children. This conclusion is supported by the law of this State.

In Chicago Title & Trust Co. v. Ward, 332 Ill. 126 (1928), the registration of stock on the books of a corporation was held to constitute a gift from father to daughter, although the father retained possession of the certificates. There, the father purchased 350 shares of stock and delivered the four certificates representing those shares to the company, directing that it issue four new certificates in the daughter's name. The new certificates were never delivered to the daughter, although her father informed her that he had bought the stock for her. The daughter died within six months after the issuance of the certificates in her name. Almost two years after the daughter's death the father surrendered the certificates, endorsed with her name but not in her handwriting, to the corporation. The corporation then issued four new certificates in the father's name. The administrator of the daughter's estate brought an action against the father for conversion. The father defended on the ground that there could have been no gift without delivery of the certificates to the daughter. The court dismissed this defense as follows (pp. 134–135):

"So far as the question has been considered, this court is committed to the doctrine that a transfer of shares on the books of the corporation passes the legal title to the person named in the stock certificate. The certificate being only secondary evidence of title and not necessary, the transfer on the books at the instance

of the donor being the best evidence of delivery of which the gift is susceptible, no other rule is compatible with the principle of protection of the donee against retraction of a completed gift. . . .

"The shares of stock having been given by Benton to his daughter and the 'donative intent' evidenced by having the shares purchased for the purpose transferred upon the books of the corporation in her name, the legal title thereto passed to her."

In Nolan v. American Telephone & Telegraph Co., 326 Ill. App. 328 (1945) a transfer of stock from parent to child on the books of the corporation was designated a constructive or symbolic delivery and the legal presumption of a gift from parent to child arising out of such a transaction was clearly set forth in the opinion, although in that case the presumption was rebutted by evidence which indicated an absence of any donative intent on the part of the father. Where stock increase shares were issued either directly to decedent's wife on the corporate books or through transfers by the decedent which were receipted on the corporate books for the wife by him as her agent, other evidence, such as dividend payments to the wife, and the wife's written authority to decedent to vote the shares as her proxy, has been held to establish a gift from husband to wife, although the certificates were found in decedent's safe-deposit box, apparently never having been delivered to the wife. Moore v. Moore, 237 Ill. App. 190 (1925).

The view that a completed gift of corporate stock may be made by a transfer of ownership on the books of the corporation, although the donor retains possession or control of the certificate issued in the name of the donee, has not been unanimously adopted. See Mechem, Gifts of Corporation Shares, 20 Ill. L. Rev. 9, 24–27 (1925); 99 A. L. R. 1077, 1080–1084; 23 A.L.R.2d 1171, 1186–1191. The case of Chicago Title & Trust Co.

v. Ward, supra, has been recognized as a leading case advancing that principle. Because of it, Illinois has been considered one of the jurisdictions recognizing a transfer of stock on the corporate books as the best evidence of a gift in the light of which the actual delivery of a stock certificate is only secondary evidence of title and therefore unnecessary to the completed gift. See In re Bush's Trust, 249 Minn. 39, 81 N.W.2d 615, 622 (1957).

■ ■ However, the Court of Appeals for the Seventh Circuit has held that the Uniform Stock Transfer Act (Ill. Rev. Stat. 1957, ch. 32, par. 416), requiring delivery of the certificate to effect a stock transfer, is "utterly irreconcilable" with the doctrine of the Ward case. Shinsaku Nagano v. McGrath, 187 F.2d 753. The court concluded in the McGrath opinion that the rule announced in the Ward case is no longer the law of Illinois, although it conceded the absence of any decision by an Illinois court to this effect. This court is required neither to accept nor to reject that pronouncement. The facts with which we are now confronted relate to the creation and original issuance of stock, rather than to the transfer of a certificate representing shares of stock already in existence. See Christy & McLean, The Transfer of Stock, sec. 6 (2nd ed. 1941, at p. 14). The statutory requirement of delivery is not applicable in a case involving the issuance of a stock certificate. Shinsaku Nagano v. McGrath, supra, at p. 757. Therefore, whatever effect the Uniform Stock Transfer Act may have on the scope of the rule laid down in the Ward case, the Act can have no effect upon the transaction now under consideration. We believe that there was a sufficient legal transfer of the property represented by shares of stock in the Roger William Building Corporation to create a presumption of a gift of such property from Harry to his children. The presumption is strengthened by the fact that Har-

ry held substantial funds as guardian for the estates of his children and the burden of rebutting it rested with the defendants. The ruling of the master to the contrary and his recommendation that the amended complaint be dismissed were therefore in error.

■ Defendants raise the defense of laches against both plaintiffs, who deny its applicability in the instant case. There is no fixed standard for determining whether or not an equitable claim has been made with due diligence. Rizzo v. Rizzo, 3 Ill.2d 291 (1954); Freymark v. Handke, 415 Ill. 360 (1953); Einsweiler v. Einsweiler, 390 Ill. 286 (1945). In Freymark v. Handke, supra, the court said at pp. 366–367:

"The exact number of years which have elapsed is not the controlling element. *Laches* depends on whether, under all the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. It has been defined to be such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of equity. Where there is such a change in the relations of the parties or such a change in the subject matter of the suit as to render it inequitable to grant relief, it will be refused without reference to the statutory period of limitation."

■■ We are of the opinion that the lapse of over seven years from the directors' meeting of December 30, 1943, until the filing of this suit, together with Robert's acquiescence, as a director, in the transaction with Cormack constituted laches. Robert permitted such change in the subject matter of this suit that prejudice to the defendants was specifically caused by his failure to act diligently in his own behalf. Louise, who was insane at the time of the transactions in question and remained incompetent at the time of the filing

of this suit, cannot have her rights defeated by the defense of laches. 7 Illinois Law and Practice, Chancery, sec. 122; Van Buskirk v. Van Buskirk, 148 Ill. 9, 26 (1893). We conclude that the finding that Robert was guilty of laches in his own behalf was proper. The finding that he was guilty of laches as conservator of the estate of Louise Luebke was not proper.

The order of the trial court is affirmed as to Robert Luebke individually. The order of the trial court as to Robert Luebke, as conservator of the estate of Louise Luebke, is reversed and the cause remanded with directions to the court to grant Robert Luebke, as conservator of the estate of Louise Luebke, incompetent, the relief prayed as set forth in the amended complaint, and for such further proceedings as are consistent with said prayer.

Affirmed in part, reversed in part and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.