MARTA VALDOVINOS, as Parent, Guardian, and Next Friend of Daniel Valdovinos, a Disabled Individual, Plaintiff-Appellant, v. TADANORI TOMITA, Indiv. and as an Employee and Agent of Children's Memorial Hospital, *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—08—2401

Opinion filed August 4, 2009.

Holstein Law Offices, LLC (Robert A. Holstein, of counsel), and Brief Source (Anthony M. Sciara, of counsel), both of Chicago, for appellant.

Lowis & Gellen, LLP, of Chicago (Deborah R. O'Brien, Pamela L. Gellen, and Scott R. Wolfe, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Marta Valdovinos, as parent, guardian, and next friend of Daniel Valdovinos (Daniel), appeals from an order of the circuit court dismissing both counts of her fifth amended complaint against the defendants, Dr. Tadanori Tomita and Children's Memorial Hospital (Children's Memorial). For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.

The procedural history of this matter is long and complex, comprising over 18 years of litigation. For the sake of brevity, we have attempted to limit our recitation of the facts to those necessary to resolve the issues presented in this appeal.

On June 6, 1991, the plaintiff, as parent and next friend of Daniel, filed a complaint in the law division, asserting claims for medical negligence against various doctors and hospitals involved in her prenatal care and Daniel's birth and postdelivery care. During the course of the litigation, the plaintiff filed multiple amended complaints. The final complaint filed in that action alleged that Daniel suffered severe neurological damage when the plaintiff was injected with a drug during her pregnancy. The plaintiff asserted causes of action for negligence and strict products liability against the pharmaceutical company which manufactured the drug, Parke-Davis and Company, and for medical malpractice against the doctor who administered the drug, Dr. Juliette Luna-Joson, and the clinic where she worked, the Luna-Manalac Medical Center.

While the law division action was still pending, the plaintiff filed a two-count complaint in the chancery division on September 19, 1997. Among those named as defendants in this suit was Dr. Tomita, a doctor who had operated on Daniel shortly after his birth in 1984 and last saw Daniel approximately one year later. In the chancery complaint, the plaintiff alleged that Dr. Tomita had refused to meet with her attorneys prior to giving his deposition in the law division action and that certain answers he gave at the deposition demonstrated that he had engaged in *ex parte* communications with defense counsel in violation of *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 558, 499 N.E.2d 952 (1986). In count I, the plaintiff sought a mandatory injunction ordering Dr. Tomita to meet with the plaintiff's attorneys prior to testifying at trial in the law division case. In count II, the plaintiff asserted a cause of action for conspiracy to commit and the actual commission of "outrageous tortious conduct." In the prayer for relief on count II, the plaintiff sought orders: enjoining Dr. Tomita and Daniel's other treating physicians from communicating with anyone regarding Daniel's medical treatment without his consent; impounding the evidence deposition given by Dr. Tomita and restraining the

parties from offering the deposition at trial; barring Dr. Tomita from testifying at trial; and disqualifying certain attorneys.

In the law division action, the plaintiff filed a motion to stay the proceedings pending the outcome of the chancery action. After the denial of that motion, the plaintiff moved to voluntarily dismiss the law division action. The circuit court allowed the voluntary dismissal but ordered $117,059.41 in fees and cost to be paid to the defendants pursuant to Supreme Court Rule 219(e) (166 Ill. 2d R. 219(e)).

The defendants in the chancery action filed motions to dismiss the plaintiff's complaint and seeking the imposition of sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The circuit court subsequently dismissed the plaintiff's chancery action with prejudice. Without conducting a hearing, the court also denied the defendants' request for the imposition of Rule 137 sanctions. On appeal, we affirmed the circuit court's dismissal of the plaintiff's chancery complaint, but reversed the circuit court's order denying the motions for Rule 137 sanctions and remanded with instructions that the defendants be afforded a hearing on their motions for sanctions. *Valdovinos v. Tomita*, No. 1—98—1746 (1999) (unpublished under Supreme Court Rule 23). The record before us does not indicate whether such a hearing was held.

The circuit court's orders allowing the voluntary dismissal of the law division action, but imposing fees and costs on the plaintiff, were subsequently upheld on appeal. *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 328 Ill. App. 3d 255, 764 N.E.2d 1264 (2002). Thereafter, the plaintiff reinstated her case in the law division. On December 29, 2005, the plaintiff and the remaining defendants entered into a settlement agreement, and the law division action was dismissed.

On February 14, 2006, the plaintiff initiated the current action against Dr. Tomita and his employer, Children's Memorial (collectively referred to as the defendants). The plaintiff subsequently filed a two-count, fifth amended complaint seeking damages for fraud. Count I was directed against Dr. Tomita and alleged that the doctor intentionally misrepresented the nature of Daniel's injuries in a June 26, 1984, operative report. According to the plaintiff, Dr. Tomita noted in his 1984 operative report that CT scans taken on June 19, 1984, showed that Daniel suffered from "hypodense" subdural hematomas, indicating that the hematomas occurred prior to the birth process. However, at an evidence deposition taken on July 29, 1997, Dr. Tomita testified that the 1984 operative report contained a "typographical" error and that the CT scans showed that Daniel's hematomas were "hyperdense," meaning that they occurred during the birth process. The plaintiff alleged that, as a result of Dr. Tomita's misrepresentation,

she was fraudulently induced into suing the wrong parties and settling her law division claims for a fraction of their value. Count II asserted a cause of action for fraud against Children's Memorial, alleging that Dr. Tomita was acting within the course and scope of his employment with the hospital and that Children's Memorial knew or should have known that Dr. Tomita's 1984 operative report was fraudulent.

The defendants filed a motion to dismiss the plaintiff's fifth amended complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2008)). In their motion, the defendants contended that both counts I and II should be dismissed under section 2—619(a)(4) of the Code as barred by the doctrine of *res judicata*, and, alternatively, pursuant to section 2—619(a)(9) of the Code by application of the defense of *laches*. The motion also argued that count II of the fifth amended complaint should be dismissed because it failed to set forth a direct claim for fraud against Children's Memorial.

On May 7, 2008, the circuit court granted the defendants' motion to dismiss the fifth amended complaint. In its ruling, the circuit court found that the doctrine of *res judicata* did not bar the plaintiff's instant claims. Instead, the court concluded that the plaintiff's claims for fraud were barred by the defense of *laches*, noting that the plaintiff waited 9 years after the discovery of the alleged fraud in 1997, and over 24 years after the allegedly fraudulent act itself, to file the current action. Following the denial of her motion for reconsideration, the plaintiff appealed to this court.

In urging the reversal of the dismissal of her fifth amended complaint, the plaintiff contends the circuit court erroneously applied the defense of *laches*. The plaintiff argues, *inter alia*, that *laches* cannot be asserted against a mentally incompetent person such as Daniel.

That portion of the defendants' motion to dismiss pertaining to the defense of *laches* was brought pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2008)). A section 2—619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632, 808 N.E.2d 1 (2004). In ruling on such a motion, a court must construe the pleadings and supporting documents in a light most favorable to the nonmoving party. *Webb v. Damisch*, 362 Ill. App. 3d 1032, 1037, 842 N.E.2d 140 (2005). The relevant question on appeal is "whether the existence of a genuine issue of material fact should have precluded dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d

112, 116-17, 619 N.E.2d 732 (1993). This court does not give deference to the circuit court's judgment on a motion to dismiss pursuant to section 2—619 but, rather, reviews the matter *de novo. Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 613, 863 N.E.2d 743 (2007).

The equitable defense of *laches* bars an action where an unreasonable delay in bringing suit has caused a party to be misled, prejudiced, or take a course of action he would not have otherwise taken. *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 770-71, 643 N.E.2d 272 (1994). In order to invoke this defense, the defendant must prove: (1) a lack of diligence by the plaintiff in bringing the suit and (2) that the plaintiff's delay resulted in prejudice. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 822, 884 N.E.2d 756 (2008).

Traditionally, the defense of *laches* was limited to actions arising in equity and was unavailable in actions at law. *People ex rel. McCoy v. Sherman*, 123 Ill. App. 3d 444, 446, 462 N.E.2d 817 (1984); *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill. App. 3d 37, 52, 390 N.E.2d 393 (1979). Over time, Illinois courts have expanded the application of the defense. For example, *laches* is now routinely applied in lawsuits simultaneously seeking both legal and equitable remedies. See, *e.g.*, *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 196, 627 N.E.2d 1256 (1994); *Coleman v. O'Grady*, 207 Ill. App. 3d 43, 52, 565 N.E.2d 253 (1990); *Bays v. Matthews*, 108 Ill. App. 3d 1112, 1116, 440 N.E.2d 142 (1982). There is still disagreement, however, as to whether *laches* is an appropriate defense to suits only seeking monetary damages, such as the one filed in the instant action. Compare *Kotsias v. Continental Bank, N.A.*, 235 Ill. App. 3d 472, 477, 601 N.E.2d 1185 (1992), with *People ex rel. Jackson v. DeGroot Motor Services, Inc.*, 222 Ill. App. 3d 594, 603, 584 N.E.2d 263 (1991). Nevertheless, we need not decide whether the nonequitable nature of the plaintiff's claims precludes the application of *laches* as the defense is inapplicable for another reason; namely, Daniel's alleged mental incompetency.

It is well established that an individual under a legal disability cannot be held accountable for any apparent delay, negligence, or *laches* in seeking redress through the courts. *Van Buskirk v. Van Buskirk*, 148 Ill. 9, 26, 35 N.E. 383 (1893); *Zimmerman v. Village of Skokie*, 174 Ill. App. 3d 1001, 1007, 529 N.E.2d 599 (1988); *Haas v. Westlake Community Hospital*, 82 Ill. App. 3d 347, 349, 402 N.E.2d 883 (1980). Although the record is unclear as to whether Daniel was ever formally adjudicated mentally disabled, the fifth amended complaint alleged that, at least 10 days after his birth and until the present, Daniel has been a quadriplegic and suffering from mental retardation, cerebral palsy, and a seizure disorder. Viewing these allegations in a light most

favorable to the plaintiff, we believe that Daniel could reasonably be found to be "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs" and, thus, suffering from a "legal disability." *Estate of Riha v. Christ Hospital*, 187 Ill. App. 3d 752, 756, 544 N.E.2d 402 (1989). As the record before us contains sufficient facts to support the contention that Daniel is under a legal disability, we cannot say, as a matter of law, that Daniel's claims are barred by the defense of *laches*. See *Haas*, 82 Ill. App. 3d at 348. Accordingly, the circuit court erred in dismissing the instant action on that basis.

We reach this conclusion notwithstanding the fact that, during the last 18 years, Daniel's representatives have filed other lawsuits on his behalf and, therefore, could have brought the current action sooner. Any delay in filing a lawsuit cannot be imputed to an individual under a legal disability, even if the next friend who brings the suit is clearly guilty of *laches*. See *Luebke v. Browning*, 18 Ill. App. 2d 427, 440-41, 152 N.E.2d 589 (1958) (mentally disabled person not accountable for her conservator's seven-year delay in bringing suit). To hold otherwise would require that the enforcement of an incompetent person's rights be " ' "left to the whim or mercy of some self-constituted next friend." ' " *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 454, 687 N.E.2d 1014 (1997), quoting *Passmore v. Walther Memorial Hospital*, 152 Ill. App. 3d 554, 558, 504 N.E.2d 778 (1987), quoting *Girman v. County of Cook*, 103 Ill. App. 3d 897, 898, 431 N.E.2d 1291 (1981).

On appeal, the defendants raise two alternative grounds for affirmance. They contend that the plaintiff's fifth amended complaint must be dismissed because its claims are barred by the doctrine of *res judicata* and because the complaint fails to state a cause of action for fraud. As this court may affirm the judgment of the circuit court on any basis appearing in the record (*Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 955, 858 N.E.2d 530 (2006)), we will consider the defendants' arguments.

Initially, we address the defendants' contention that the doctrine of *res judicata* precludes the plaintiff's claims for fraud. The defendants maintain that the fraud claims are barred by the doctrine of *res judicata* because the plaintiff could have included, but failed to include, these claims in the 1997 chancery action. Because this issue was raised in the circuit court pursuant to section 2—619(a)(4) of the Code (735 ILCS 5/2—619(a)(4) (West 2008)), our review is *de novo*. See *Fuller Family Holdings*, 371 Ill. App. 3d at 613.

Under the doctrine of *res judicata*, a final judgment on the merits is conclusive as to the rights of the parties and their privies, and bars

any subsequent action between the same parties involving the same claim, demand, or cause of action. *IFC Credit Corp. v. Magnetic Technologies, Ltd.*, 368 Ill. App. 3d 898, 900, 859 N.E.2d 76 (2006). The bar extends not only to what was actually decided in the first action, but also to those matters that could have been decided. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 703 N.E.2d 883 (1998). For the doctrine of *res judicata* to apply, three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of causes of action; and (3) identity of parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210 (2008).

In this case, the parties do not dispute that the same parties or their privies were involved in both the 1997 chancery action and the instant suit or that a final judgment on the merits was rendered in the chancery action. Consequently, the only issue presented is whether the two cases involved distinct causes of action.

To determine whether two causes of action are the same, Illinois courts apply the "transactional" test. Pursuant to this test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 184 Ill. 2d at 311. The transactional test is to be applied pragmatically, taking into account such considerations as whether " 'the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *River Park, Inc.*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments §24, at 196 (1982).

In the 1997 chancery action, the plaintiff sought a number of injunctions, including orders: directing Dr. Tomita to meet with Daniel's attorney prior to testifying at trial; enjoining Dr. Tomita and Daniel's other treating physicians from communicating with anyone regarding Daniel's medical treatment without his consent; impounding the evidence deposition given by Dr. Tomita and restraining the parties from offering the deposition at trial; barring Dr. Tomita from testifying at trial; and disqualifying certain attorneys. The operative facts underlying the 1997 chancery action involved allegations that Dr. Tomita's refusal to meet with Daniel's attorneys prior to the 1997 evidence deposition, and the answers he gave at the deposition, demonstrated that the doctor had engaged in *ex parte* communications with defense counsel in violation of *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 588, 499 N.E.2d 952 (1986). In contrast, the facts underlying the plaintiff's claims for fraud are premised on an al-

legation that Dr. Tomita falsified his 1984 operative report by noting that Daniel suffered from "hypodense" hematomas, not "hyperdense" hematomas, as he later testified at his 1997 deposition. Because the current lawsuit and the 1997 chancery action were not predicated on a single group of operative facts, the doctrine of *res judicata* does not bar the plaintiff's claims for fraud, and the circuit court correctly refused to dismiss the fifth amended complaint on that basis.

Finally, we turn to the defendants' contention that the plaintiff's fifth amended complaint fails to set forth a sufficient cause of action for fraud. In their brief before this court, the defendants argue that the fifth amended complaint fails to sufficiently allege that Dr. Tomita intended to deceive the plaintiff or that the plaintiff justifiably relied upon Dr. Tomita's purportedly false statement. These issues, however, were not raised in the defendants' motion to dismiss the fifth amended complaint and are, therefore, forfeited for purposes of this appeal. See *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 161, 708 N.E.2d 1122 (1999) ("Issues raised for the first time on appeal are waived"). Additionally, although the motion to dismiss did assert that count II of the fifth amended complaint failed to set forth a direct claim for fraud against Children's Memorial, this argument was not included in the defendants' brief on appeal, and it is, likewise, forfeited. See 210 Ill. 2d R. 341(h)(7) ("Points not argued are waived ***").

For the foregoing reasons, we reverse the circuit court's dismissal of the plaintiff's fifth amended complaint and remand the cause for further proceedings.

Reversed and remanded.

KARNEZIS, P.J., and CUNNINGHAM, J., concur.