JOHN G. KOTSIAS, Plaintiff-Appellant, v. CONTINENTAL BANK, N.A., Defendant-Appellee.

First District (1st Division)   No. 1—91—1359

Opinion filed September 21, 1992.

John G. Kotsias, of Chicago, appellant *pro se.*

Mayer, Brown & Platt, of Chicago (William E. Deitrick, Ruth Miller, and Ira J. Belcove, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff John Kotsias filed this action for monetary damages against Continental Bank, N.A. (Continental), alleging that it had wrongfully honored a forged letter of direction, purportedly authored by the then living settlor, George Korovinis, to remove plaintiff as the sole beneficiary of a Totten trust opened and maintained at defendant's bank. Plaintiff's amended complaint pursued theories of negligence, fraud, breach of contract and breach of various sections of the Uniform Commercial Code—Bank Deposits and Collections (the Code) (Ill. Rev. Stat. 1989, ch. 26, par. 4—101 *et seq.*).

After a bench trial, the circuit court of Cook County entered judgment against plaintiff on all claims, holding that: (1) the *Moorman* doctrine, first enunciated in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, barred plaintiff's negligence count; (2) plaintiff failed to show that the letter of direction was a forgery; and (3) plaintiff's claims were affirmatively barred by the doctrine of judicial estoppel and plaintiff's failure to mitigate damages.

Plaintiff on appeal contests these findings and, in addition, alleges that the circuit court erred in failing to address his fraud and Code claims and that the court abused its discretion in allowing Continental to add during trial the affirmative defenses of judicial estoppel and mitigation of damages. We affirm.

On January 6, 1984, George Korovinis, age 94, opened and deposited $143,000 into a Totten trust account at Continental, naming plaintiff as the sole beneficiary. Plaintiff accompanied Korovinis, his "teacher, mentor and life-long friend," to Continental and was present during the opening procedure.

On September 18, 1984, Continental received a letter of direction, purportedly handwritten and signed by Korovinis, to remove plaintiff as a beneficiary from the account. The letter stated that plaintiff "ha[d] been dishonest to me" and requested Continental to send a confirmation of the change.

Donna Bylina, a personal banking investigator with Continental, testified that she compared the letter's signature with the trust account's signature card. After concluding the two matched, Bylina caused Continental on September 19, 1984, to change the title of the account as directed from "George J. Korovinis Trustee for John G. Kotsias" to that of Korovinis in his individual capacity. Continental sent a letter of confirmation to Korovinis bearing the same date as the change. Continental never received any response to its confirmation letter.

Korovinis died on January 29, 1985. Within days, plaintiff contacted Continental regarding the account and was informed his name was no

longer on the account. Plaintiff had not seen Korovinis for at least three or four months prior to his death. Plaintiff consulted with lawyers to determine any rights he may have had to the funds.

Following the appointment of a public administrator, Continental paid over to the administrator of the Korovinis estate the proceeds of the account, which then totaled $156,105.83. Although plaintiff testified that he knew the trust account funds were not going to him as early as August 1985, plaintiff never filed any claim against the estate during its administration relative to the trust account funds. On August 20, 1986, the estate was ordered closed, and the proceeds of the account were distributed to Korovinis' heirs at law in Greece. No evidence exists that any heir knew of the account's existence.

At approximately the same time that the Korovinis estate was being probated, Kotsias was pursuing a voluntary petition for bankruptcy. In that petition, filed on November 27, 1985, Kotsias affirmatively answered "none" to a question asking for a listing of all "contingent and unliquidated claims of every nature." Kotsias did list an $11,000 debt to the Korovinis estate, but labeled the debt "disputed."

Plaintiff obtained a discharge of his debts from the bankruptcy court on May 20, 1986, and plaintiff's bankruptcy estate was closed on August 29, 1986, nine days after the closure of the Korovinis estate. Two months later, plaintiff filed an appearance with the probate court and later petitioned to reopen the Korovinis estate. The probate court denied plaintiff's petition on the grounds of tardiness and plaintiff's failure to provide any justification for his delay.

Plaintiff filed the instant action against Continental on September 6, 1989, four years and nine months following Korovinis' death. In his initial *pro se* complaint, plaintiff did not specify what legal theory of recovery formed the basis of his suit, but he nevertheless sought $20 million in damages.

The circuit court heard three days of testimony in late October 1990. Kotsias filed an amended complaint, and the court permitted Continental to file an amended answer which included the affirmative defenses of judicial estoppel and mitigation of damages. The trial concluded with a short day of testimony in December 1990.

On April 11, 1991, the circuit court entered final judgment against plaintiff. In part, the circuit court concluded that not only did plaintiff fail to prove the letter of direction to be a forgery, but that Continental, although not required to do so, proved by a preponderance of the evidence that the letter originated with Korovinis.

On review, we agree with Continental that whether it breached a contract or duty of care, committed fraud or wrongfully dishonored an

item under section 4—402 of the Code turned on whether plaintiff proved by a preponderance of the evidence that the letter of direction was a forgery. We believe, therefore, that the dispositive issue on appeal is whether the circuit court's factual conclusion on the authenticity of the letter of direction was contrary to the manifest weight of the evidence. As discussed more fully below, our review of the evidence leads us to conclude that the manifest weight of the evidence supports the court's belief that Korovinis authored the letter.

■ Because Korovinis is deceased, and no person testified to have witnessed Korovinis' execution of the letter of direction, no direct evidence exists that Korovinis authored the letter. However, Korovinis' authorship could be proven by circumstantial evidence:

"Proof of authenticity or identification may be by direct or circumstantial evidence.

\*\*\*

\*\*\* In reaching its determination as to admissibility, the court must view all the evidence introduced as to authentication \*\*\*, including issues of credibility, most favorable to the proponent. If upon consideration of the evidence as a whole, the court determines that the evidence is sufficient to support a finding by a reasonable juror that it is more probably true than not true that the matter in question is what its proponent claims, the evidence will be admitted. \*\*\* The ultimate decision as to whether a person, document, or item of real or demonstrative evidence admitted in evidence is as purported is for the trier of fact." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §901.1 (5th ed. 1990).

Support for our affirmance on the factual issue of the letter's authenticity begins with an analysis of plaintiff's own testimony. Plaintiff testified that he, his wife and grandmother, and Korovinis were the only people whom plaintiff knew to have knowledge of the fact that plaintiff was a beneficiary of the account. Plaintiff testified that Korovinis was extremely secretive about his finances and that Korovinis told plaintiff numerous times that he did not want others to know about the account. Plaintiff presented no proof that others, particularly Korovinis' legal heirs, knew of the account.

The above circumstances support the trial court's conclusion that Korovinis authored the letter of direction. (See *People v. Buford* (1982), 110 Ill. App. 3d 46, 441 N.E.2d 1235; *People v. Munoz* (1979), 70 Ill. App. 3d 76, 388 N.E.2d 133.) Authenticity on this ground is supported by the following rationale:

" 'For this principle to operate the [writing] must deal with a matter sufficiently obscure or particularly within the knowledge of the persons corresponding so that the contents of the [writing] were not a matter of common knowledge.

The evidential hypothesis in the authentication step is this: only those who knew the details in the [writing] could have written it; if the purported writer can be shown to have probably known the details and if no other person is likely to have known them when the [writing] was written, it is likely that he wrote it. The force of the inference decreases as the number of people who know the details and may have written the [writing] increases.' " *Munoz*, 70 Ill. App. 3d at 87, 388 N.E.2d at 141, quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence par. 901(b)(4) [01], at 46.

The *Munoz* rationale also applies to a statement in the letter of direction that plaintiff "has been dishonest to me." At trial, Continental demonstrated that plaintiff and Korovinis may indeed have been having problems at the time the letter was authored.

Plaintiff testified that after the account was opened and prior to the letter of direction, Korovinis loaned plaintiff $11,000. Plaintiff never reimbursed Korovinis, and plaintiff's obligation to repay Korovinis was discharged in bankruptcy. Plaintiff admitted to not seeing Korovinis for a period of about 3 to 4 months prior to Korovinis' death, a period corresponding to the time the letter of direction was sent.

Linda Schiewe Wolf, a former social worker for Catholic Charities, testified that when she visited Korovinis a short time before his death in the winter of 1984-85, Korovinis was concerned about not being repaid a sum of money which he had loaned a former student. Korovinis repeated this concern several times.

Apart from the evidence supplying certain inferences of authorship based on the *Munoz* rationale, another statement in the letter is inconsistent with an inference of forgery: a request for confirmation of the change in title. We agree with the circuit court's observation that an alleged forger would not likely place a confirmatory request in a forged letter of direction.

Relative to the requested confirmatory memoranda, Donna Bylina of Continental identified the letter she sent in confirmation of the title change. She testified that she typed the letter and envelope herself, placed the letter in the envelope, and placed the envelope in one of Continental's out boxes for mailing. This mailing routine was the office practice. Continental never received a response to its confirmation.

Two inferences arise from Bylina's testimony. The first is that Korovinis presumptively received the confirmation letter. (See *First Na-*

*tional Bank v. Guerra Construction Co.* (1987), 153 Ill. App. 3d 662, 668, 505 N.E.2d 1373; *Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 129, 356 N.E.2d 1150.) The second is that, assuming Korovinis received the letter, Korovinis' failure to respond evinces his agreement with the change in title, otherwise he would have responded to the contrary. Even if no letter of confirmation was sent as argued by plaintiff, plaintiff cannot get around the fact that the letter of direction requested confirmation, an unlikely request of a forger.

Plaintiff's only evidence that the letter of direction was in fact a forgery came from his handwriting analysis expert. While the expert believed the letter of direction constituted a forgery, his testimony is suspect. First, the latest standard the expert used was written in January 1983, 20 months prior to the alleged authorship of the letter of direction. Other standards the expert utilized were written by Korovinis in the early 1940's. On cross-examination, the expert could not rule out that a near-death change in Korovinis' health accounted for the change in writing he observed.

Second, the expert concluded that the signature card and check used to fund the account were forgeries. This conclusion, as the circuit court noted, is indeed "curious," in light of the undisputed evidence that plaintiff and Korovinis opened the Totten trust account together.

Finally, plaintiff's expert evidence was in contrast to the testimony of Bylina, who testified that she personally compared the signature on the letter of direction with the signature card and concluded that they matched. The respective weight and credibility of plaintiff's expert and Bylina were for the trial court to determine (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 986, 466 N.E.2d 958), as was the entire factual issue of who authored the letter of direction.

▮ After reviewing the record evidence, we believe that the manifest weight of the evidence supports the trial court's determination that Korovinis authored the letter of direction. Accordingly, as proof of a forgery was central to plaintiff's claims, plaintiff's causes of actions all must fail.

▮ Although unnecessary to our disposition, we believe plaintiff's claims against Continental are barred by the doctrine of *laches*. To assert the defense of *laches*, a party must show an unreasonable delay in bringing the action and that the delay materially prejudiced him. (*Eckberg v. Benso* (1989), 182 Ill. App. 3d 126, 537 N.E.2d 967.) While traditionally the doctrine has been viewed as barring equitable actions only (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393), recent cases have applied it to bar claims of law as well. See *Coleman v. O'Grady* (1990), 207 Ill. App. 3d 43, 565 N.E.2d

253, *appeal denied* (1991), 137 Ill. 2d 664, 571 N.E.2d 147; see also *People ex rel. Jackson v. Degroot Motors Services, Inc.* (1991), 222 Ill. App. 3d 594, 584 N.E.2d 263 (reviewing conflicting law on legal/equitable distinction).

In this case, plaintiff cannot readily dispute his knowledge of a potential claim to the trust account's proceeds. He was present when the account was opened and witnessed Korovinis sign the necessary bank forms to establish him as beneficiary. Approximately one year following the opening of the account, Korovinis died. Within days, plaintiff learned he would not get the proceeds of the account.

Plaintiff testified that during the summer months following Korovinis' death, he researched the filing of claims against an estate and consulted with an attorney. When this attorney failed to investigate plaintiff's claim to his satisfaction, other attorneys were contacted, and one was even retained.

During the pendency of the Korovinis estate, plaintiff's November 1985 petition for bankruptcy proceeded forward. In sworn disclosure statements, plaintiff did not disclose his contingent claim for the proceeds of the Totten trust account. However, plaintiff did list his debt to Korovinis in his bankruptcy petition. This debt was successfully discharged. Plaintiff's bankruptcy case terminated in August 1986.

About the same time that plaintiff emerged from bankruptcy, the Korovinis estate was closed. Two months later, plaintiff sought to reopen the estate to assert a claim to the account proceeds. Plaintiff did not seek to amend his bankruptcy petition to include his claim against the estate. Plaintiff's effort to reopen the estate was denied in June 1987. Plaintiff commenced the instant action against Continental in September 1989, some four years and nine months following Korovinis' death.

We believe plaintiff's failure to file a claim against Continental until almost five years after Korovinis' death was an unreasonable delay. Whether this delay was motivated by plaintiff's desire to "have his cake and eat it too" is not necessary for us to conclude. It is sufficient that plaintiff knew of a potential claim and failed to act upon it for almost five years.

The prejudice to Continental which resulted from plaintiff's delay is manifest. Upon presentation of the public administrator's letters of office, Continental paid over the account proceeds. Continental was merely a stake holder of the account proceeds at this time; it did not care who ultimately received the money. Had Continental timely received a claim from plaintiff to the funds, it could have taken appropriate actions to protect its interests. Failing such claim, Continental did

what it was required to do: pay the funds to the Korovinis estate. Clearly, to now allow plaintiff to seek redress from Continental in light of plaintiff's harmful delay is inequitable.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.