In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2988

THE NATURE CONSERVANCY,

*Plaintiff-Appellee*,

*v.*

WILDER CORPORATION OF
DELAWARE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 CV 1096—**Michael M. Mihm,** *Judge*.

ARGUED NOVEMBER 1, 2010—DECIDED SEPTEMBER 1, 2011

Before ROVNER, WOOD and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. This case proves the maxim that, in appellate briefing, bluster is inversely proportional to merit. This diversity action is a simple breach of contract case seeking money damages, brought well within the applicable Illinois statute of limitations. The defendant contends that the action nevertheless should be barred by the equitable doctrine of laches. Unsupported by any case law in Illinois or the Seventh

Circuit, the undeterred defendant concedes that it can produce no evidence in support of a key element of its defense: prejudice. The defendant attempts to fill the gaps in law and evidence with exaggerated outrage. The district court was not persuaded and neither are we. We affirm the district court's grant of summary judgment in favor of the plaintiff.

## I.

In the spring of 2000, The Nature Conservancy (the "Conservancy") purchased 6,660 acres of farmland from Wilder Corporation of Delaware ("Wilder") for $16,350,000. Wilder had conducted agricultural operations on the land, and the Conservancy intended to use the property as a nature preserve. Following the sale, Wilder remained on the land as a tenant until the end of 2002, continuing its regular operations, which included raising 5,000 to 6,000 head of cattle. After Wilder vacated the premises, from 2003 through 2005, the Conservancy leased parts of the land to several other parties for growing corn, soybeans and hay.

The sales contract ("Contract") required Wilder to remove from the property all rubbish, hazardous or toxic substances, petroleum contamination, and cattle sewage, among other things. As part of the Contract, Wilder provided certain representations and warranties regarding the property:

> There have not been and there are not now any underground or aboveground storage tanks, septic tanks

or wells located on or under the property or if there have been or are any such tanks or wells located on the property, their location has been disclosed to the Conservancy in writing, they have been properly registered with all appropriate authorities, they are in full compliance with all applicable statutes, ordinances and regulations, and they have not resulted in the release of any hazardous or toxic substance, material or waste into the environment.

R. 1-1, Ex. A, ¶ 15(d). The Contract also authorized the Conservancy to conduct an environmental inspection of the property. Prior to closing, the inspection revealed significant amounts of rubbish, trash, and toxic chemicals and substances. The Conservancy agreed to close on the sale prior to Wilder completing the cleanup. The parties signed a supplemental agreement ("Supplemental Agreement") to account for the delay. Under the Supplemental Agreement, the Conservancy held back $75,000 of the purchase price to apply toward the cost of any cleanup that Wilder failed to perform by August 1, 2000.

The Conservancy sued Wilder in February 2006 in state court, charging that Wilder breached the warranty regarding storage tanks, failed to fulfill a number of the cleanup provisions and failed to pay real estate taxes during the lease period as agreed. Shortly thereafter, the suit was removed to federal court. In December 2007, the district court granted partial summary judgment to the Conservancy. The Court subsequently reopened discovery and allowed the Conservancy to amend its complaint to seek relief for additional areas of contamina-

tion discovered during the litigation. Specifically, the Conservancy had discovered petroleum-contaminated soil at the former site of an undisclosed aboveground storage tank in an area of the property the parties describe as "south of the Pump House." The district court granted summary judgment in favor of the Conservancy on the additional claim relating to contamination south of the Pump House, and ultimately resolved all of the claims raised, for the most part in favor of the Conservancy.[1] In this appeal, Wilder challenges the judgment only with respect to the additional claim for contamination south of the Pump House.

## II.

Our review of the district court's grant of summary judgment in favor of the Conservancy is *de novo*. *Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). On appeal, Wilder contends that the breach

---

[1] Although not at issue in this appeal, Wilder filed counterclaims against the Conservancy. The district court resolved all of the claims and counterclaims except for Count IV of Wilder's counterclaims, which has been expressly abandoned by Wilder. An order that effectively ends the litigation on the merits is appealable as a final order even if the lower court did not formally enter judgment on a separate claim if that separate claim was abandoned. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 667 (7th Cir. 1986).

of contract claim relating to the contamination south of the Pump House should be barred by the equitable doctrine of laches because the Conservancy raised the claim nearly seven years after performing an environmental inspection of the land and nearly five years after Wilder vacated the property. Wilder claims that the delay was unreasonable and inexcusable, and that it was materially prejudiced by the delay. According to Wilder, the Conservancy deprived Wilder of any opportunity to defend itself against the claim.

Under Illinois law, laches is "'a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity.'" *Sundance Homes, Inc. v. County of DuPage*, 746 N.E.2d 254, 262 (Ill. 2001) (quoting *Meyers v. Kissner*, 594 N.E.2d 336, 340 (Ill. 1992)). "Laches is not simply a matter of delay, and to bar the action 'it must appear that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he would have otherwise taken.'" *DeBruyn v. Elrod*, 418 N.E.2d 413, 417 (Ill. 1981) (quoting *People ex rel. Casey v. Health & Hosps. Governing Comm'n of Ill.*, 370 N.E.2d 499, 502 (Ill. 1977)). Illinois courts traditionally applied statutes of limitations in actions at law and the doctrine of laches in suits seeking equitable relief. *Sundance Homes*, 746 N.E.2d at 262-63. Over time, though, Illinois courts have begun to question the continuing relevance of the law-equity dichotomy, and the Illinois Supreme Court has noted that "*laches* analysis

is no longer mechanically applied to all actions denominated equitable, particularly where such an application would frustrate the intent of the legislature." *Sundance Homes*, 746 N.E.2d at 263. As an example, the court noted that it had previously applied the five-year statute of limitations specified in 735 ILCS 5/13-205 to actions for constructive trusts, even though a constructive trust is considered an equitable remedy imposed by a court to prevent unjust enrichment. *Sundance Homes*, 746 N.E.2d at 263.

The Conservancy's claim against Wilder is for breach of contract and seeks only money damages. The applicable statute of limitations requires plaintiffs to bring such suits within ten years. *See* 735 ILCS 5/13-206. The Conservancy brought the suit well within the statutory period. Wilder nevertheless contends that the Conservancy's action should be barred by laches, and that Illinois courts sanction the use of this equitable doctrine in cases at law, even when there is an applicable statute of limitations. Wilder cites *Maksym v. Loesch*, 937 F.2d 1237, 1248 (7th Cir. 1991), where we noted that Illinois courts have at times invoked laches to bar suits at law, and also to bar suits that had been brought within the statutory period. But we also observed in *Maksym* that every one of the Illinois cases declaring that laches applied to suits at law were really cases where the relief sought was quasi-equitable; none of the actions sought damages only. 937 F.2d at 1248. As for Illinois cases where courts invoked laches to bar suits that had been brought within the statutory period, we remarked that in those instances, the courts had used laches as a

doctrine of estoppel rather than a substitute for a statute of limitations. *Maksym*, 937 F.2d at 1248. In the end, we found that laches could not apply to a suit for damages under Illinois law. *Id.*

Wilder claims that Illinois law has evolved after *Maksym*, and that *Sundance Homes* and a number of Illinois appellate court cases decided after *Maksym* demonstrate the viability of laches as a defense to a breach of contract claim seeking damages only. According to Wilder, *Sundance Homes* establishes that the Illinois Supreme Court is no longer concerned with the distinction between law and equity in determining whether a laches defense is appropriate in an action at law. Nothing in *Sundance Homes* supports Wilder's argument. On the contrary, *Sundance Homes* decried "artful pleading designed to cloak the cause in the attire of equity" in order to avoid relevant statutes of limitations that the legislature meant to apply. *Sundance Homes*, 746 N.E.2d at 269. The *Sundance Homes* court remarked that statutes of limitations necessarily reflected the legislature's balancing of competing interests:

> Statutes of limitation and repose represent society's recognition that predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice that must be balanced against the right of every citizen to seek redress for a legally recognized wrong.

*Sundance Homes*, 746 N.E.2d at 260 (internal citations omitted). *See also Peregrine Fin. Group, Inc. v. Futronix Trading, Ltd.*, 929 N.E.2d 1226, 1228 (Ill. App. Ct. 2010)

(noting that statutes of limitations are measures of public policy, the determination of which lies almost exclusively in the legislative domain, and holding that courts will not interfere with that determination in the absence of "palpable error in the exercise of the legislative judgment"). Rather than applying laches to an action at law, in *Sundance Homes*, the court applied a statute of limitations to a claim that had been characterized as equitable.

The Illinois appellate court cases on which Wilder relies provide no more support than *Sundance Homes*. Three of the cases involve a peculiarity of Illinois law relating to actions brought by civil servants for back pay. *See Bill v. Board of Educ. of Cicero Sch. Dist. 99*, 812 N.E.2d 604 (Ill. App. Ct. 2004); *Summers v. Village of Durand*, 643 N.E.2d 272 (Ill. App. Ct. 1994); *Lee v. City of Decatur*, 627 N.E.2d 1256 (Ill. App. Ct. 1994). In each instance, the courts applied the Illinois rule that terminated civil servants seeking back pay generally must bring suits within six months of termination. *Bill*, 812 N.E.2d at 616-18; *Summers*, 643 N.E.2d at 276; *Lee*, 627 N.E.2d at 1258-59. After that time period, public employers that have hired and paid replacement workers in the interim are presumed to be prejudiced by the delay. To hold otherwise would allow plaintiffs to accumulate large claims for back pay at the same time the public employer was paying a second salary to the replacement worker. *Bill*, 812 N.E.2d at 610-11. These cases clearly have no applicability to a suit for breach of contract between private parties, where the plaintiff seeks only money damages.

In another case on which Wilder relies, the court discussed in *dicta* the defense of laches in an action for damages. *See Kotsias v. Continental Bank, N.A.*, 601 N.E.2d 1185 (Ill. App. Ct. 1992). The defendant raised the affirmative defense of judicial estoppel but never argued that the plaintiff's claims were barred by laches. After concluding that the plaintiff lost on the merits of the case, the court added, "Although unnecessary to our disposition, we believe plaintiff's claims against Continental are barred by the doctrine of laches." 601 N.E.2d at 1189. The court then discussed a traditional laches analysis without any acknowledgment of the relevant statute of limitations. This *dicta* does not support Wilder's argument. Indeed, Wilder has been unable to find a single Illinois cases applying laches to a breach of contract case between private parties seeking only money damages. Our research likewise did not reveal any such cases.

In the end, however, we need not resolve this issue of Illinois law in order to decide the case. Even if we assume for the purposes of the appeal that laches could apply to this action for breach of contract seeking money damages, we find that Wilder's defense of laches fails for lack of evidence of prejudice. Although the Illinois courts are in conflict over the vanishing line between law and equity, they are consistent on the elements of the defense of laches. For laches to apply, first, the plaintiff must have exhibited an unreasonable delay in asserting a claim. *Sundance Homes*, 746 N.E.2d at 262 (the plaintiff must have knowledge of her right, and yet fail to assert it in a timely manner); *Monson v. County of*

*Grundy*, 916 N.E.2d 620, 623 (Ill. App. Ct. 2009), *appeal denied*, 924 N.E.2d 456 (Ill. 2010) (the defense of laches requires first a showing that a party has exhibited an unreasonable delay in asserting a claim); *Valdovinos v. Tomita*, 914 N.E.2d 221, 226 (Ill. App. Ct. 2009) (to invoke the defense of laches, the defendant must prove a lack of diligence by the plaintiff in bringing the suit); *Bill*, 812 N.E.2d at 610 (plaintiff must have knowledge of a right and fail to assert it in a timely manner, with no reasonable excuse for the delay); *Summers*, 643 N.E.2d at 275 (same); *Kotsias*, 601 N.E.2d at 1189 (same). We know from the unchallenged judgment against Wilder on other counts that Wilder may have contributed to the delay by failing to notify the Conservancy of the presence of underground tanks, as required by the Contract. In fact, Wilder affirmatively and falsely represented that there were no such tanks. The Conservancy had no reason to test the area south of the Pump House until new facts came to light during other remediation work on the property relating to underground tanks, and that occurred once the litigation was well under way. The Conservancy brought the claim for contamination south of the Pump House as soon as it became aware of the problem.

We need not decide, however, whether the Conservancy's delay in adding the claim for contamination south of the Pump House was reasonable because we can resolve the case on the other element of the laches defense, namely prejudice. Under Illinois law, the defendant must demonstrate that the plaintiff's unreasonable delay caused material prejudice to the defendant.

*Sundance Homes*, 746 N.E.2d at 262 (plaintiff's delay must cause prejudice to the adverse party for laches to apply); *Kotsias*, 601 N.E.2d at 1189 (to assert the defense of laches, a defendant must show that the plaintiff's delay in bringing the action materially prejudiced the defendant); *DeBruyn*, 418 N.E.2d at 417 (the plaintiff's delay must have prejudiced and misled the defendant, or caused him to pursue a different course from what he otherwise would have taken in order for laches to apply). *See also Monson*, 916 N.E.2d at 623; *Valdovinos*, 914 N.E.2d at 226; *Bill*, 812 N.E.2d at 610; *Summers*, 643 N.E.2d at 275.

And this is where the brisk wind of bluster enters the appeal. Wilder's claim of prejudice is wholly conclusory and entirely devoid of support in the record. Wilder complains that by waiting until five years after the company vacated the property to bring the claim, "[t]he Conservancy deprived Wilder of any hope of defending itself against the claim." Appellant's Brief at 15. Because it was not the last tenant on the property, Wilder asserts there is no way of knowing who contaminated the property. Wilder contends that "asserting this claim nearly five years after Wilder vacated the property almost guaranteed that Wilder would be incapable of mounting a defense." Appellant's Brief at 18. But Wilder cites no evidence that it even attempted to discover what happened after it vacated the property. The court allowed discovery on the new claim and the Conservancy identified the subsequent tenants to Wilder. But Wilder failed to investigate any of the subsequent tenants. It produced no testimony that wit-

nesses could no longer recall what happened on the property. It produced no affidavits stating that business records had been lost or destroyed during the intervening years. It simply failed to ask either the Conservancy or any third-party witnesses any relevant questions about the years after Wilder vacated the property. Rather than conceding its own failures in the discovery process, Wilder attempts to blame the Conservancy for any gaps in the evidence:

> And by waiting 5 years after Wilder left the property before finding [the contamination], The Nature Conservancy guaranteed that Wilder's defense would consist of little more than rank speculation. And now the *coup de grace*. The Nature Conservancy argues that Wilder cannot raise the defense of laches because it is incapable of coming forward with specific facts proving that it has been prejudiced. Of course it can't. The Conservancy made sure of that.

Appellant's Reply Brief, at 2. It is not often that a defendant will admit that its defense consists of "little more than rank speculation," or that it is "incapable of coming forward with specific facts proving that it has been prejudiced." These concessions are tantamount to an admission that the defense is frivolous, and the argument on appeal borders on the sanctionable.

In one last attempt to blame the Conservancy for Wilder's own failures, Wilder compares its situation to that of the defendant in *Smith v. Caterpillar, Inc.*, 338 F.3d 730 (7th Cir. 2003). Wilder argues that Caterpillar

satisfied the element of prejudice in that case by demonstrating that, after the plaintiff delayed filing suit for eight years: (1) the testimony of several pertinent witnesses would be difficult, if not impossible, for Caterpillar to procure; (2) the witnesses' memories had faded over the years and they would be unable to recall specific relevant details; (3) the inadvertent loss or even the intentional destruction of documents in the normal course of business would seriously impair Caterpillar's ability to defend itself; and (4) Caterpillar was exposed to liability for back pay that had been accumulating during the delay in filing the suit. There is one glaring problem with Wilder's reliance on *Caterpillar*: the defendant in that case submitted *evidence* in support of its claims of prejudice. 338 F.3d at 734-35. First, Caterpillar submitted evidence that key witnesses had died, left the jurisdiction, or retired and lost contact with the company. Second, Caterpillar submitted affidavits from four witnesses averring that they could no longer recall the details of the subject matter of the law suit. Third, Caterpillar demonstrated that key documents necessary to its defense had been destroyed as part of routine record maintenance. And fourth, Caterpillar noted that the plaintiff's delay in filing the suit had allowed the claim for back pay to accumulate unchecked for more than eight years. *Id*. In contrast, Wilder has not submitted one shred of evidence in support of its claim of prejudice. Wilder has not asked pertinent witnesses what, if anything, they recall about the relevant five-year period. It has not asked third parties who occupied the land to produce documents. Instead of

establishing any prejudice, Wilder relies on bombast. Bluster and bombast are poor substitutes for evidence. We may affirm summary judgment on any basis we find in the record. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 681 (7th Cir. 2007). We affirm the judgment in favor of the Conservancy based on Wilder's complete failure to present any evidence on prejudice, a key element of its claimed defense.

AFFIRMED.