In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1461

SKYRISE CONSTRUCTION GROUP, LLC,

*Plaintiff-Appellant*,

*v.*

ANNEX CONSTRUCTION, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-00381 — **Nancy Joseph**, *Magistrate Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED APRIL 21, 2020

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge.* Skyrise Construction Group, LLC, a subcontractor, sued Annex Construction, LLC, a general contractor, for breach of contract, promissory estoppel, negligent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and violation of the Wisconsin Deceptive Trade Practices

Act, Wis. Stat. 100.18. The district court granted summary judgment in favor of the defendants on all claims. We affirm.

**I.**

In the early summer of 2017, Annex Construction, LLC ("Annex"), issued a request for bids from subcontractors for a project to construct housing units near the University of Wisconsin-Oshkosh ("Project"). Skyrise Construction Group, LLC ("Skyrise") answered that call for bids by submitting a proposal on July 7, 2017, to supply the rough framing carpentry labor for the Project at a price of $899,662. Skyrise submitted a second bid that same day for $970,000, revised to include a charge for "stick building."[1] Annex rejected the July 7 bids, and Skyrise followed up with a July 19 bid for $950,000. The July 19 bid caught Annex's interest, and Tom Tomaszewski, the President of Annex, responded that same day with an emailed "Letter of Intent" ("Letter") to John Trojan, Skyrise's project manager. In that Letter, Tomaszewski expressed "the intention of Annex" to "enter into a contract with Skyrise" for the rough carpentry work for the Project, and informed Skyrise that Annex would "work on getting you contract documents in the near future." R. 19, at 12. On the basis of that Letter, Skyrise immediately blocked out the Project on its calendar and declined to pursue or accept other work during the period that it expected the Project to proceed.

---

[1] "Stick building" involves constructing all of the framing on site, as opposed to modular building, which employs prefabricated components. *See* https://en.wikipedia.org/wiki/Stick-built_construction (last visited April 14, 2020).

On August 2, Annex emailed the promised contract to Skyrise. The draft document (hereafter "Proposed Contract") consisted of a six-page "Agreement Between Contractor and Subcontractor," containing the general parameters of the agreement; a fourteen-page Exhibit A labeled "Subcontract General Conditions," consisting of eleven articles and numerous sub-articles detailing subjects such as design, construction, timing, payment terms, insurance, modifications, and dispute resolution; Exhibit B, a page labeled "The Construction Documents," with a link to an internet site; Exhibit C, a page labeled "The Project Schedule," which was otherwise blank; and Exhibit D, a page labeled "Lien Waiver and Contractor's Affidavit Forms," which was also otherwise blank. The Proposed Contract declared, in part, that it represented the entire agreement between the parties, superceding all prior negotiations in any form. R. 19, at 17.

Skyrise believed that the framing work was scheduled to begin in the first week of October, but the subcontractor delayed signing and returning the Proposed Contract.[2] More than a month later, on September 6, Annex again emailed the Proposed Contract to Skyline. The next day, Trojan sent an

---

[2] The timing provisions of the Proposed Contract specified that the work would proceed according to the Project Schedule, a document that was blank when the Proposed Contract was initially presented to Skyrise. Those same timing provisions warned that Annex retained the right to modify the schedule and the sequence of the work, and that the subcontractor would be expected to accommodate those changes. On summary judgment, we must credit Skyrise's assertion that Tomaszewski orally represented to Skyrise that the Project would be ready for Skyrise to begin the framing work in early October 2017.

email to Tomaszewski explaining that he (Trojan) was "still reviewing the contracts and ... should have it back to you tomorrow." R. 18, at 8. But instead of returning the Proposed Contract the next day, Trojan sent a request a week later on behalf of Skyrise's managing member, Ignacio Garcia: Trojan asked that Tomaszewski "sign our proposal and return [it] to Skyrise Construction while he [Garcia] is reviewing your contract documents." R. 19, at 15. On September 22, Tomaszewski complied with this request, signing the July 19 bid proposal and writing on the face of the document, "Contract exhibit A." R. 19, at 13–14. Skyrise still did not sign and return the Proposed Contract.

Annex requested that Skyrise personnel attend a meeting at the construction site on October 9, and Skyrise complied. Skyrise personnel saw that the project was not ready for framing, and the parties began to discuss a possible expanded role for Skyrise in getting the Project completed on schedule. A few days later, on October 11, Tomaszewski received an email containing the Proposed Contract, signed by Garcia and marked with handwritten edits to the payment terms and also to two items involving the scope of the work to be completed.[3] Garcia later asserted that Tomaszewski had orally agreed to the edits regarding payment terms, and that Garcia was merely fixing errors in the terms related to the scope of work. Annex never signed this revised version of the Proposed Contract.

---

[3] Skyrise asserts that it signed and mailed a hard copy of the Proposed Contract on August 10. Apparently, that document was sent to an old address for Annex. Tomaszewski received a scanned copy by email on August 11.

Throughout October, the parties continued to discuss a potentially broader scope of work for Skyrise. On October 31, Skyrise submitted a vastly expanded proposal seeking a contract for framing, siding, windows, and drywall, totaling $3,864,643. On November 2, Tomaszewski sent an email to Trojan and Garcia stating:

> We are going to go ahead and pass on this guys. I appreciate the hard work however I am going to bring in a large framing company we have a very good relationship with and can meet our timeframe and schedule at a much lower cost.

> I will have our council [sic] get you a letter on the original contract that you signed in the near future.

R. 19, at 62. The very next day, Annex's general counsel sent by email and overnight mail a letter formally rejecting Skyrise's October 31 proposal and also stating that Annex "will not be accepting and countersigning the Agreement as marked-up by Subcontractor and is therefore null and void." R. 19, at 63.

Skyrise then filed this diversity suit against Annex, seeking damages for breach of contract, promissory estoppel, negligent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("Illinois Act"), and violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. 100.18 ("Wisconsin Act"). On cross-motions for summary judgment, the district court granted judgment in favor of Annex on all counts and denied Skyrise's motion. Skyrise appeals.

**II.**

On appeal, Skyrise contends that fact disputes preclude judgment on every count. On the breach of contract claim, Skyrise asserts that a contract was formed either on September 22, when Tomaszewski signed the July 19 bid, or on October 10 when Skyrise signed and returned Annex's contract. In the alternative, Skyrise seeks damages for promissory estoppel, contending that it reasonably relied on the Letter of Intent and Annex's oral representations over the next two months when it decided to block off its schedule for the Project and decline other work during the period that it expected to be working on the Project. For the three remaining claims, Skyrise relies on the same core of facts in arguing that Annex made misrepresentations and engaged in deceptive conduct on which Skyrise relied to its detriment.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to Skyrise and construing all reasonable inferences from the evidence in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Yahnke v. Kane County, Ill.*, 823 F.3d 1066, 1070 (7th Cir. 2016). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 250; *Yahnke*, 823 F.3d at 1070. We may affirm summary judgment on any basis we find in the record. *Nature Conservancy v. Wilder Corp. of Del.*, 656 F.3d 646, 653 (7th Cir. 2011).

Although federal law governs procedure in a case in which federal court jurisdiction is premised on diversity of citizen-

ship, state law applies to substantive issues. *Fednav Int'l, Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010); *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). The Proposed Contract specifies that it "shall be governed by the laws of the state where the Project is located," which in this case is Wisconsin. R. 19, at 22. In a diversity case involving a contract that stipulates which state's law is to govern, a federal court must follow state law in deciding whether to enforce the stipulation. *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Wisconsin generally honors stipulations as to choice of law unless they conflict with public policy. *American Family Mut. Ins. Co. v. Cintas Corp. No. 2*, 914 N.W.2d 76, 82 (Wis. 2018). Because nothing here is contrary to Wisconsin's public policy, Wisconsin law governs the contract claim. For the other claims, with the exception of the claim premised on the Illinois Act, "[w]hen neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *RLI Ins.*, 543 F.3d at 390. Thus, with the exception noted, Wisconsin law applies to the substantive issues in the other claims as well.

## A.

We begin with Skyrise's claim for breach of contract. The first step in evaluating a breach of contract claim is to determine whether a valid contract exists. *Steele v. Pacesetter Motor Cars, Inc.*, 672 N.W.2d 141, 144 (Wis. Ct. App. 2003). Creation of a contract requires an offer, an acceptance, and consideration. *Marks v. Houston Cas. Co.*, 881 N.W.2d 309, 328 (Wis. 2016); *Paul R. Ponfil Trust v. Charmoli Holdings, LLC*, 935 N.W.2d 308, 311 (Wis. Ct. App. 2019). "The existence of an offer

and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 96 (Wis. Ct. App. 1994). Agreements to agree are not enforceable contracts under Wisconsin law. *Dunlop v. Laitsch*, 113 N.W.2d 551, 554 (Wis. 1962).

Skyrise maintains that a contract was formed either when Annex signed the July 19 bid on September 22, or when Skyrise signed and returned the Proposed Contract on October 10. Neither theory succeeds under Wisconsin law. At the time that Annex signed the July 19 bid, the undisputed record demonstrates that neither party believed or intended that the signed bid would create a contract. In Wisconsin, the party seeking to enforce a contract must demonstrate that there was a "meeting of the minds," that is, that the parties intended to form a contract. *Household Utilities, Inc. v. Andrews*, 236 N.W.2d 663, 669 (Wis. 1976); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987). The intent of the parties is generally "derived from a consideration of their words, written and oral, and their actions." *Household Utilities*, 236 N.W.2d at 669. Wisconsin takes an objective view of "intent," and therefore "[s]ecret hopes and wishes count for nothing." *Skycom*, 813 F.2d at 814.

> The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves. It is therefore unimportant whether [the plaintiff] ex-

> pected this [document] to be the definitive agree-
> ment; the binding force of the document depends on
> public or shared expressions.

*Skycom*, 813 F.2d at 814–15.

When Tomaszewski signed the July 19 bid, he did so at Trojan's request and at the assurance of Garcia, through Trojan, that Garcia was still reviewing Annex's Proposed Contract. With that understanding, Tomaszewski marked the signed bid, "Contract exhibit A" to indicate that he intended for it to become part of the final agreement, not a contract in and of itself. Although Garcia later averred that he considered the signing of the bid to signal Annex's commitment to the deal, his external action of contemporaneously communicating that he was still reviewing the Proposed Contract, and Tomaszewski's unmistakable indication that the bid was simply an exhibit to the larger agreement under review, contradict this subjective interpretation of Tomaszewski's signature on the bid. *See American Nat'l Property & Cas. Co. v. Nersesian*, 689 N.W.2d 922, 928 (Wis. Ct. App. 2004) (where the parties understand that preliminary writings are to be followed by a formal contract containing additional material provisions and signed by the parties, no binding or completed contract will be found). Both parties clearly viewed the July 19 bid as a preliminary writing that was to be followed by the formal Proposed Contract, which contained roughly twenty pages of additional, material terms. When the "public or shared expressions" of the parties are not in dispute, and those expressions objectively demonstrate that the parties have not yet reached an agreement, summary judgment is appropriate. In the undisputed circumstances presented here,

Tomaszewski's September 22 signing of the July 19 bid did not create a contract because neither party manifested an objective intent to do so at that time.

Nor was a contract created when Skyrise signed and returned a marked-up version of the Proposed Contract on October 11. "[M]aking material revisions to a contract offer and then signing the revised contract offer does not constitute an acceptance of the offer, but rather creates a counteroffer that the other party must affirmatively accept before there is an agreement." *Disciplinary Hearings Against Nora*, 909 N.W.2d 155, 163 (Wis. 2018). *See also Fricano v. Bank of Am. NA*, 875 N.W.2d 143, 153–54 (Wis. Ct. App. 2015) (an acceptance that varies the terms of the offer constitutes a rejection and a counteroffer, and no contract is formed until the counteroffer is accepted). In this case, Garcia made handwritten alterations to the Proposed Contract before signing and returning it. First, in Article 2 of the document titled "Agreement Between Contractor and Subcontractor," Garcia struck out the terms "roofing felt" and "adhesives" from lists of items to be installed as part of the Project. He contended that he was simply correcting errors in making this change. It is difficult to determine on this record whether those alterations could be described as material. Construing the facts in favor of Skyrise, we will therefore treat those alterations as non-material for the purposes of the appeal.

But in Article 4 of that same document, Garcia struck out eight lines of an eleven-line paragraph titled "Progress Payments." This paragraph supplied the terms for the timing of payments and the conditions under which payments would be made. Skyrise cannot plausibly claim that this alteration was

not a material change to the contract. Nevertheless, Skyrise contends that Tomaszewski had orally agreed to the change. Annex never signed the altered version of the Proposed Contract and instead sent a formal rejection a few weeks later, after the parties unsuccessfully attempted to negotiate an expanded agreement. The Proposed Contract itself provides that it represents the entire agreement and supercedes "all prior negotiations, representations or agreements, whether written or verbal" and so any claim that Tomaszewski orally changed the agreement must fail. Instead, Garcia's material alteration to the Proposed Contract operated as a rejection of the agreement and a counteroffer. Because Annex never accepted the counteroffer, no contract was formed. The court therefore correctly granted judgment in favor of Annex on the claim for breach of contract.

**B.**

Skyrise argues in the alternative that, if no contract existed, it is entitled to damages under the doctrine of promissory estoppel. Wisconsin adopted that doctrine as it is set forth in the Restatement First of Contracts. *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267, 274 (Wis. 1965).

> A claim of promissory estoppel involves three elements: (1) whether the promise is one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) whether the promise induced such action or forbearance; and (3) whether injustice can be avoided only by enforcement of the promise.

*Bicknese v. Sutula*, 660 N.W.2d 289, 294 (Wis. 2003) (citing *Hoffman*). *See also Kramer v. Alpine Valley Resort, Inc.*, 321 N.W.2d 293, 295–96 (Wis. 1982) (same). The first two elements present questions of fact and the third is a question of law. *Kramer*, 321 N.W.2d at 296; *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 807 (7th Cir. 2016). Promissory estoppel is usually available only in limited circumstances and does not allow "circumvention of carefully designed rules of contract law." *C.G. Schmidt*, 825 F.3d at 807 (quoting *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)). Skyrise asserts that fact disputes preclude summary judgment on its promissory estoppel claim. Namely, Skyrise claims that a jury must decide whether it was reasonable for Skyrise to forgo bidding on other work based on the promises and actions of Annex.

The promise on which Skyrise claims to have relied was that "on July 19, 2017, Annex committed to Skyrise that it was selected as the framing and window installation subcontractor for the ... Project." Plaintiff's Brief at 38. In support of this "commitment," Skyrise cites Tomaszewski's email that day which stated, "thanks look forward to working together," and the attached Letter which professed, "it is the intention of Annex ... to enter into a contract with Skyrise." On appeal, Skyrise also points to subsequent events as forming the basis of its reliance. In particular, Skyrise cites Tomaszewski's September 22 signing of the bid, and Skyrise's attendence at

the on-site meeting in October, which it characterizes as "part performance."[4] But:

> the reliance that makes the promise legally enforceable must be induced by a reasonable expectation that the promise will be carried out. A promise that is vague and hedged about with conditions may nevertheless have a sufficient expected value to induce a reasonable person to invest time and effort in trying to maximize the likelihood that the promise will be carried out. But if he does so knowing that he is investing for a chance, rather than relying on a firm promise that a reasonable person would expect to be carried out, he cannot plead promissory estoppel.

*Cosgrove v. Bartolotta*, 150 F.3d 729, 733 (7th Cir. 1998). *See also C.G. Schmidt*, 825 F.3d at 809 (conditional promises are not a reasonable basis for reliance). Such was the situation here as both parties understood it on July 19 and throughout the months of negotiations and discussions that followed.

Annex was interested in Skyrise's bid and expressed that interest with the Letter of Intent. But contemporaneously, Annex placed significant conditions on its interest. Those conditions took the form of approximately twenty pages of fine

---

[4]    Skyrise repeatedly refers to its attendance at the October 9 on-site meeting as "required" by Annex, citing Garcia's affidavit and Tomaszewski's deposition. But those documents do not support an inference that attendance at this meeting was "required," and in fact Garcia averred only that he attended this planning meeting at Tomaszewski's "request."

print in the Proposed Contract. Skyrise did not act reasonably as a matter of law when, on July 19, it blocked out its schedule and declined to pursue other bids on the basis of a Letter of Intent that came with those significant conditions. In Wisconsin, that Letter and Tomaszewski's vague expressions of looking forward to working together operated as nothing more than an unenforceable agreement to agree. *Dunlop*, 113 N.W.2d at 554. Annex indicated only that Skyrise would be selected **if** the parties could come to terms. Although the parties continued to talk about a possible deal for another two months, Skyrise points to nothing more than protracted negotiations that never led to a firm promise that Skyrise could reasonably expect to be carried out. Instead, the undisputed, objective evidence demonstrates that both parties intended for their relationship to be governed by a detailed contract that remained under review by Skyrise for two months before Skyrise ultimately rejected that contract by marking it with material alterations. Skyrise "knew, or at least should have known, that the negotiations could fall apart before the parties entered into a binding agreement." *C.G. Schmidt*, 825 F.3d at 809. It may not recover damages under the doctrine of promissory estoppel in these undisputed circumstances.[5]

---

[5]  In support of its promissory estoppel argument, Skyrise also cited *Drennan v. Star Paving Co.*, 333 P.2d 757 (Cal. 1958). *Drennan* held that when a subcontractor makes an unqualified bid to a general contractor, knowing that the general contractor will include the subcontractor's offer in its own bid to the project owner, the general contractor may reasonably rely on the subcontractor's bid and enforce it through the doctrine of promissory estoppel if the contractor's bid is subsequently accepted. Skyrise sought to

(continued...)

## C.

The three remaining counts seek damages for the tort of negligent misrepresentation, violation of the Illinois Act, and violation of the Wisconsin Act. Negligent misrepresentation "requires a showing that defendant made a misrepresentation of fact upon which the plaintiffs relied to their detriment." *Green Spring Farms v. Kersten*, 401 N.W.2d 816, 822 (Wis. 1987). *See also Malzewski v. Rapkin*, 723 N.W.2d 156, 163 (Wis. Ct. App. 2006) (the elements of negligent misrepresentation are that the defendant made a representation of fact; that the representation was untrue; that the defendant was negligent in making the representation; and that the plaintiff believed that the representation was true and relied on it). Similarly, to make out a claim under the Wisconsin Act, a plaintiff must demonstrate that the defendant made a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. 100.18(1).[6] *See also K&S Tool & Die Corp. v. Perfection Mach. Sales,*

---

[5] (...continued)

enforce the inverse of this rule, arguing that, as the subcontractor, it could hold the contractor to its bid. But, as we discussed, Skyrise's reliance was not reasonable under the circumstances here, and the rationale for *Drennan* does not hold up in this inverted factual scenario.

[6] The parties dispute whether the Wisconsin Act is applicable to the circumstances here. Annex asserts that this consumer protection statute does not apply to negotiations between a contractor and subcontractor. But we need not decide this issue because the claim fails even if the statute is applicable. Similarly, Annex asserts that the Illinois Act is inapplicable because the parties' negotiations did not primarily and substantially occur in Illinois. We decline to address that issue because the claim fails even if

(continued...)

*Inc.*, 732 N.W.2d 792, 798 (Wis. 2007) (to prevail on a section 100.18 claim, a plaintiff must prove that: with the intent to induce an obligation, the defendant made a representation to the public; the representation was untrue, deceptive or misleading; and the representation caused the plaintiff a pecuniary loss). Finally, to make out a claim under the Illinois Act, a plaintiff must prove:

> (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.

*De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). *See also* 815 ILCS 505/2.

As is apparent, each of these claims requires that the plaintiff demonstrate a false statement of fact or deceptive conduct by the defendant. Skyrise asserts for each count that the misleading or deceptive statement was that Skyrise "had the framing work," Plaintiff's Brief at 44, 47, 53. As the district court correctly concluded, however, the record evidence does not show that Annex ever represented to Skyrise that it had the framing subcontract.

Skyrise relies on the same evidence that it supplied in support of its claims for breach of contract and promissory estoppel: the Letter of Intent and accompanying email;

---

[6] (...continued)
we assume that Skyrise can prove facts that meet that standard.

Tomaszewski's signature on the July 19 bid; Tomaszewski's statement at the October 9 on-site meeting that framing could begin in December; oral statements by Tomaszewski that Garcia could change certain terms in the contract; a construction schedule showing a start date for framing; and Annex's silence for three weeks following Garcia's return of the altered Proposed Contract.[7] Skyrise fails to explain how any of this was false or misled Skyrise about the nature of the situation. Instead, it is simply evidence of protracted negotiations that never resulted in a firm agreement.

There is some irony in Skyrise's claim that it was falsely led to believe that it had a firm deal when Skyrise itself held onto the Proposed Contract for two months, twice assuring Annex that it was still reviewing the draft agreement, and then altering it in a material manner before returning it. Because Skyrise has failed to provide evidence of any misleading statement or deceptive conduct by Annex, the district court

---

[7] Some of the assertions which Skyrise characterizes as deceptive or misleading are not supported by the record citations provided in the Plaintiff's Brief, and we will therefore not consider those assertions. For example, Skyrise claims that Tomaszewski made deceptive statements at an October 24 meeting at Annex's office in Frankfort, Illinois, citing two paragraphs of Garcia's affidavit in support. Neither paragraph supports a claim of a false statement on October 24 or any other date, however. In one paragraph, Garcia averred that, on October 9, Tomaszewski asked Garcia to work up an expanded bid proposal. In the other, Garcia averred that in emails on October 25, 26 and 27, Tomaszewski sought a reduction in the figures of the expanded proposal but "never indicated Skyrise didn't have the framing contract." Skyrise does not explain how any of these statements by Tomaszewski were misleading or deceptive, or how they supported a claim that Annex falsely told Skyrise that it "had the framing work."

was correct to grant judgment in favor of Annex on all three of the remaining counts.

AFFIRMED.